**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-CIV-61235-BLOOM/Valle**

In the Receivership of:

HUNTER HOSPITALITY LLC, a Wyoming
Limited Liability Company.

_____/

RALPH AND MARY LYNN DORSTEN, et al.,

      Plaintiffs,

v.

SLF SERIES G, LLC, et al.,

      Defendants.

_____/

**ORDER**
**DENYING MOTION TO REMAND**
**GRANTING MOTION TO DISMISS AND**
**GRANTING MOTION TO TRANSFER VENUE**

     **THIS CAUSE** is before the Court upon the following motions: (1) Defendant Bo Brower's motion to dismiss the Amended Complaint, ECF No. [1-1] filed by Plaintiffs Ralph and Mary Lynn Dorsten, et al. ("Plaintiffs"), for lack of personal jurisdiction and failure to state a claim, ECF No. [12] (Bo Brower's "Motion to Dismiss"); (2) Defendant Westcor Land Title Insurance Company's ("Westcor") motion to strike Plaintiffs' claim for attorney fees, ECF No. [16] (Westcor's "Motion to Strike"); (3) Defendant Columbia Pacific Income Fund I, P.L.'s ("Columbia") motion to dismiss for failure to state a claim or for a more definitive statement, ECF No. [23] (Columbia's "Motion to Dismiss"); (4) Columbia's motion to strike Plaintiffs' allegations regarding insurance coverage and demand for award of attorney's fees, ECF No. [24] (Columbia's "Motion to Strike"); (5) Defendants Lee Brower; SLF Series G, LLC ("SLF Series

G"); Pompano Waterway Development, LLC ("PWD"); Secured Lending Fund, LLC ("SLF"); NA-SLF, LLC ("NA-SLF"); K-Bro Enterprises LLC ("K-Bro"), and Zama, LLC's ("Zama") (together, the "Utah Defendants") motion to transfer venue, dismiss for failure to state a claim, or for a more definitive statement, ECF No. [25] (the "Motion to Transfer"); and (6) Plaintiffs' motion to remand this action to state court, ECF No. [38] (the "Motion to Remand"). The motions were fully briefed. *See* ECF Nos. [40], [41], [42], [43], [44], [45], [46], [47], [48], [49], [51], [52], [53], [55], [56], [57], [58], [64]. The Court had the benefit of oral argument from the parties on the motions at a hearing held on August 19, 2015, *see* ECF No. [60] (the "Hearing"), as well as Plaintiffs' Proposed Second Amended Complaint, ECF No. [65] ("PSAC"), and supplemental briefing, ECF Nos. [66], [67], [68], submitted at the Court's direction. The Court has carefully considered the motions, all supporting and opposing submissions on each of the motions, the arguments presented at the Hearing, the record in this case, and applicable law. For the reasons set forth below, the Court denies the request to remand, dismisses all counts against Columbia, and transfers this action to the District of Utah for further proceedings.

## I.    PROCEDURAL BACKGROUND

Plaintiffs initiated this action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "Circuit Court") on October 7, 2014. That case was consolidated into a pending receivership action also before the Circuit Court, which was itself initiated on August 13, 2013. Plaintiffs filed their Amended Complaint in February, 2015. Process was served on Defendant Bo Brower on May 11, 2015. Bo Brower removed the action to this Court on June 10, 2015. ECF No. [1]. On June 11, 2015, the Court entered its order of procedure in removed actions, setting certain deadlines, ECF No. [6], and on July 10, 2015, entered a preliminary scheduling order to streamline and harmonize consideration of filed or impending motions to dismiss and remand, ECF No. [37]. Per the Court's instruction at the

August 19, 2015 Hearing, Plaintiffs submitted their Proposed Second Amended Complaint on August 28, 2015, and Plaintiffs, Columbia and the Utah Defendants filed supplemental briefing with respect to the Motion to Transfer on September 10, 2015.  The six substantive motions under review are now ripe for adjudication.

## II.   FACTUAL ALLEGATIONS

Plaintiffs' claims center on a failed land development investment involving real property located in in Pompano Beach, Florida.  This background (except where indicated) is derived from the allegations in Plaintiffs' Amended Complaint.

Plaintiffs invested in a real estate development project (the "Pompano Project") through SLF Series G, a subsidiary SLF, and its affiliated managers and members.  The project failed during the real estate downturn and recession in the late 2000s.  Plaintiffs allege that SLF Series G and the entities and persons which operated that entity – what the Amended Complaint defines as the "Issuer Defendants" (which include SLF Series G, PWD, SLF, NA-SLF, K-Bro, Zama, T-Capital Partners, LLC, Lee Brower, Bo Brower, David Sheffield, Rick Bigelow and Private Consulting Group, Inc. ("PCG")) – along with what the Amended Complaint defines as the "Fraudulent Conveyance Defendants" (which include Workmen's Development Group, LLC ("Workmen's"), Hillsborough Development, LLC ("Hillsborough"), and Hunter Hospitality, LLC ("Hunter")), defrauded them in a variety of ways related to the initial and subsequent investments in SLF Series G and the eventual sale of the Pompano Property in which SLF Series G invested.

As SLF Series G promised to Plaintiffs as part of the original solicitation of funds, the investment was secured by a first priority mortgage (the "Development Mortgage") on the development property held by SLF Series G – which was in fact given when SLF Series G lent money to the developer, United South Florida Enterprises, Inc., sometime prior to February,

2007 (the "Developer Loan").  Due to non-payment, SLF Series G initiated a foreclosure action on the Developer Mortgage on February 7, 2007 (the "Foreclosure Action"), and recorded a *lis pendens* on February 8, 2007.  Plaintiffs were allegedly defrauded into making subsequent investments from 2008 to 2010, which were secured by subsequent mortgages on the Pompano Property ("Subsequent Mortgages").  The fraud involved SLF Series G withholding information about the pending foreclosure on the first priority Developer Mortgage and about the consequent worthlessness of the Subsequent Mortgages (which would be extinguished through that Foreclosure Action).  The fraud also involved SLF Series G accepting a deed in lieu of foreclosure, the temporary conveyance of title in the Pompano Property to a newly created straw affiliate, Defendant PWD, and issuance of the Subsequent Mortgages by PWD, during the foreclosure proceedings.  While PWD was added to the Foreclosure Action as a defendant, SLF Series G never filed an amended *lis pendens* to add PWD.  Plaintiffs further allege that the Issuer Defendants misrepresented to Plaintiffs that that mechanism – having a deed issued to PWD in lieu of foreclosure from the developer – would help "scrub" the property of (ostensibly other) junior liens and thereby permit development of the property, ultimately to the benefit of Plaintiffs' investments.  Finally, Plaintiffs allege that this fraud was perpetuated on them and on the Circuit Court in the Foreclosure Action.

A judgment of foreclosure foreclosing the Developer Mortgage was entered by the Circuit Court in the Foreclosure Action on January 6, 2011, and a certificate of title in the Pompano Property was issued to SLF Series G on March 5, 2011.  The property was transferred free and clear of any encumbrances.  SLF Series G then sold the Pompano Property to Workmen's, who sold it to Hillsborough, who finally sold it to Hunter.  Plaintiffs allege that those conveyances were fraudulent (despite, or perhaps in part because of, communications to

Plaintiffs seeking approval for sale of the Pompano Property).  Hunter purchased the property in

2011.  Subsequently, on February 17, 2012, Columbia loaned money to Hunter, secured by a lien

on the Pompano Property.  Westcor acted as Columbia's title insurance carrier with respect to

that transaction.  Hunter itself later failed and went into receivership in Washington State.  Jack

Rader was appointed as the Florida receiver (the "Receiver").  The Receiver initiated an ancillary

receivership action before the Circuit Court – the same umbrella action into which this action

was consolidated prior to removal.  Hunter was liquidated and the Pompano Property sold in

January, 2015.  As part of a stipulation and agreement entered into between the Receiver,

Columbia and certain Plaintiffs, and confirmed by order of the Circuit Court in the ancillary

receivership action, the Pompano Property was sold free and clear, and any liens Plaintiffs may

have in the property were transferred to the sale proceeds.  *See* ECF No. [65-12], Exh. 12 to

PSAC (stipulation and approved orders).  Columbia's secured claim was recognized and its loan

fully repaid by that liquidation sale. The remainder of the sale proceeds are being held in escrow

by the Receiver.

On March 10, 2015, Plaintiffs commenced an action in the United States District Court

for the District of Utah, *Dorsten, et al. v. Secured Lending Fund LLC, et al.*, Case No. 15-CV-

00153 (PMW) (the "Utah Action").  *See* ECF No, [25-1] (amended complaint in Utah Action).[1]

Most, but not all, of the Defendants named here are named in the Utah Action.  Plaintiffs' claims

there involve an overarching fraud allegedly perpetuated by SLF and the Utah Defendants, along

with other parties not named here (including certain investment advisors), encompassing a

---

[1] The Court may also take judicial notice of the public records in the Utah Action.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (court may take judicial notice of public filings "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"); *Universal Express, Inc. v. SEC*, 177 F. App'x. 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records, such as a complaint filed in another court); *Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 816 n. 5 (11th Cir. 2014) (same).

considerably larger lending operation and a broader set of investments and investment properties. Specifically, Plaintiffs allege there that SLF, through sub-entities (including SLF Series G), sold promissory notes to investors in order to finance a hard money lending operation which would make bridge loans to various developers of various investment properties, located in Washington, Oregon and Florida, secured by those properties. *Id.* ¶ 4. Plaintiffs allege that SLF and its owners and sub-entities defrauded their investors in issuing the notes, diligencing the property investments, managing the bridge loans, and manipulating sales of the investment properties through foreclosure or otherwise once the development loans failed. *See generally id.* ¶¶ 89-108. Those properties were sold, along with the Pompano Property, to Workmen's in 2011. *Id.* ¶¶ 106-108. As with the Pompano Property, the investment properties were later sold to downstream purchasers. *Id.* In the Utah Action, as here, Plaintiffs are suing SLF and its related entities, the investment advisors, and all downstream purchasers and interest holders, for (as applicable) fraud, breach and rescission of contract, unjust enrichment, fraudulent conveyance, declaratory relief asserting the priority of their interests in the investment properties, appointment of a receiver, class certification, and are seeking control of, or the proceeds from sale of, the investment properties. *Id.* ¶¶ 5, 117-170, wherefore clause F. Plaintiffs specifically carved out the Pompano Property from the Utah Action. *Id.* ¶ 5.

Plaintiffs here assert fourteen counts in the Amended Complaint: non-payment by the Issuer Defendants of mortgage notes with respect to the Subsequent Mortgages (Counts I and VII); declaratory judgment invalidating the *lis pendens* in the Foreclosure Action (Count II); vacation of the foreclosure judgment issued by the Circuit Court in the Foreclosure Action, allegedly obtained by intrinsic and extrinsic fraud (Count III); foreclosure of the Subsequent Mortgages or constructive trust on proceeds of the sale of the Pompano Property (Count IV);

declaratory judgment, effective against all downstream interests in and purchasers of the Pompano Property, regarding proceeds of the sale of the Pompano Property (Count V); fraud by the Issuer Defendants related to the sale of the subsequent notes (Count VIII); rescission of sale to the Fraudulent Conveyance Defendants based on fraudulent conveyance (Count X); declaratory judgment or equitable lien on sale proceeds and damages against Columbia and Westcor (Count XI); fraudulent conveyances against the Fraudulent Conveyance Defendants (Count XII); violations of securities laws by PCG (Count XIII); joinder of the Receiver (Count XIV); and class representation of certain plaintiffs for Counts I through V (Count VI) and of certain plaintiffs for Counts VII and VIII (Count IX).

### III.   DISCUSSION

Ultimately, this is the wrong forum for Plaintiffs' claims.  They are either part and parcel of the Utah Action, or belong before the Circuit Court by virtue of Plaintiffs' requested relief to vacate the foreclosure judgment.  Plaintiffs' allegations here and in the Utah Action illustrate an integrated fraud scheme, involving the same Plaintiffs and the same bundle of Defendants and encompassing SLF Series G, the Pompano Property and the Foreclosure Action. In addition, Plaintiffs fundamentally seek the same relief in the Utah Action as to all of their investments and all of the investment properties – damages from the investment-side Defendants for their alleged fraud, and reanimation of their interests in the properties, or in the proceeds from sale of those properties, to gain damages from the purchase-side Defendants (whether knowledgeable of the fraud, as bad-faith subsequent transferees, or not). As such, the Court declines to exercise its discretion to remand this action to the Circuit Court and transfers this action to the District of Utah.

### A.       Westcor's Motion to Strike

On August 24, 2015, Plaintiffs, consistent with their representations at the Hearing, voluntarily dismissed all claims against Wesctor.   ECF No. [61]. The Court subsequently dismissed Wesctor without prejudice.  ECF No. [63].  Accordingly, Westcor's Motion to Strike is denied as moot.

### B.       Plaintiffs' Motion to Remand

Plaintiffs ask the Court to remand this action to the Circuit Court for want of subject matter jurisdiction.  They argue that the *Rooker-Feldman* doctrine[2] mandates remand based on their request in Count III of the Amended Complaint. Thus, "at the heart" of this matter, Plaintiffs seek to vacate the judgment of foreclosure entered by the Circuit Court in the Foreclosure Action in January, 2011, and all intertwined claims.   They argue further that, because *Rooker-Feldman* divests this Court of jurisdiction over the request to vacate and will therefore result in a parallel state court action, *Colorado River* abstention is proper with respect to the remainder of the action.

#### 1.       *Rooker-Feldman* **Is Inapplicable**

*Rooker-Feldman* is inapplicable here.   "The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court."  *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009); *see also Nicholson v. Shafe*, 558 F.3d 1266, 1271 (11th Cir. 2009) (federal district courts have "no authority to review final judgments of a state court"); *Doe v. Florida Bar*, 630 F.3d 1336, 1340-41 (11th Cir. 2011) (where applicable, *Rooker-Feldman* deprives federal court of subject matter jurisdiction).  *Rooker-Feldman* is "confined to

---

[2] *Rooker v. Fid. Trust. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

cases of the kind from which the doctrine acquired its name: 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

As the Supreme Court has explained, "*Rooker-Feldman* [is] inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Lance v. Dennis*, 546 U.S. 459, 464 (2006); *see also Shuler v. Swatek*, 465 F. App'x 900, 902 (11th Cir. 2012) (citing *Lance* for the same). Further, [t]he *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." *Lance*, 546 U.S. at 466.

Plaintiffs were not a party to the state court proceeding that rendered the judgment of foreclosure at issue. In fact, their Complaint is premised on the allegations that they had no notice of and were not parties to the Foreclosure Action. Accordingly, Plaintiffs are not "state-court losers" seeking redress for injuries caused by a state court judgment, and *Rooker-Feldman* is inapplicable.[3]

Because the Court is not divested of jurisdiction by operation of *Rooker-Feldman* and need not remand any part of this action to the Circuit Court on that basis, Plaintiff's argument for *Colorado River* abstention is a non-starter: there is no parallel state court proceeding in

---

[3] The Supreme Court declined to completely rule out "whether there are *any* circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not named in an earlier state proceeding." *Lance*, 546 U.S. 459 n.2 (emphasis in original). As an example, the *Lance* court offered an estate bringing a *de facto* appeal in a district court of an earlier state decision involving the decedent. Plaintiffs do not stand in the shoes of or otherwise seek to represent parties to the Foreclosure Action. Again, a premise of their action is that they were fraudulently prevented from participating in the Foreclosure Action, to the detriment of their own interests. Accordingly, they do not fit into the potential space left open by *Lance*.

deference to which to abstain.[4]  The Motion to Remand, on the basis of the *Rooker-Feldman* doctrine, must be denied.

## 2.      This Court Can Grant Relief With Respect to Count III

Despite the inapplicability of *Rooker-Feldman* to divest this Court of jurisdiction, Plaintiffs raise a practical issue with regard to the ability of this Court to issue relief as to Count III of their Amended Complaint.  Again, Plaintiffs seek vacation of the foreclosure judgment rendered by the Circuit Court in the Foreclosure Action, which they allege was obtained by intrinsic and extrinsic fraud.  Plaintiffs question the Court's ability to vacate the foreclosure judgment.  After all,

> This Court has held on numerous occasions that federal district courts do not have jurisdiction under . . . any [] theory to reverse or modify the judgments of state courts.  We echo that it is axiomatic that a federal district court, as a court of original jurisdiction, lacks appellate jurisdiction to review, modify, or nullify a final order of a state court.  The proper forum for [such] relief . . . [is] the United States Supreme Court.

*Kimball v. The Florida Bar*, 632 F.2d 1283, 1284 (5th Cir. 1980) (quoting *Lampkin-Asam v. Supreme Court of Florida*, 601 F.2d 760 (5th Cir. 1979) and citing 28 U.S.C. § 1257).[5]

First, Plaintiffs' argument is somewhat circular.  The authority which limits a federal court's jurisdiction to upset or vacate a state court judgment ultimately stems from the Supreme Court cases which interpret 28 U.S.C. § 1257 and establish *Rooker-Feldman*.  *See*, *e.g.*, *Kimball*, 632 F.2d at 1284; *In re James*, 940 F.2d 46, 53 (3d Cir. 1991) (citing *Feldman* – which "made it clear that federal district courts and federal courts of appeals lack jurisdiction to review or reverse a state court judgment on the merits" – in holding that a federal court can vacate a state court judgment only when that judgment is void *ab initio*); *Brinkmann v. Johnston*, 793 F.2d

---

[4] "*Colorado River* addresses the circumstances in which federal courts should abstain from exercising their jurisdiction because a parallel lawsuit is proceeding in one or more state courts."  *Ambrosia Coal and Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1327 (11th Cir. 2004).

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

111, 113 (5th Cir. 1986) (citing to *Feldman*, its progenitors and progeny in holding that "litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits" and that "[e]rrors committed by state judges in state courts are for correction in the state court system").  But, as explained above, the Supreme Court, "emphasiz[ing] the narrowness of the *Rooker-Feldman* rule" and that "the doctrine applies only in limited circumstances," explained that *Rooker-Feldman*'s limitation of a district court's jurisdiction applies only to suits brought by state court losers "in effect seek[ing] to take an appeal of an unfavorable state-court decision to a lower federal court" – which Plaintiffs are not.  *Lance*, 546 U.S. at 464, 466.

Second, this Court's ability to grant relief in this action is at least equal to that of the Circuit Court from which this case was removed.  Because removed state court proceedings are treated as if they originated in the district court, "[a] federal district court may dissolve or modify injunctions, orders, and all other proceedings which have taken place in state court prior to removal."  *Jackson v. Am. Sav. Mortgage Corp.*, 924 F.2d 195, 199 (11th Cir. 1991).  Under Florida law, a successor court may modify or vacate rulings or orders of its predecessor, prior to final judgment.  *Hull & Co., Inc. v. Thomas*, 834 So. 2d 904, 906 (Fla. 4th DCA 2003) ("As a matter of 'comity and courtesy,' a judge should hesitate to undo the work of another judge who presided earlier in the case.  However, prior to final judgment, a successor judge has the power to vacate or modify a predecessor's interlocutory rulings, such as an order on a motion for summary judgment.") (citing *Tingle v. Dade County Bd. of County Comm'rs*, 245 So. 2d 76, 78 (Fla. 1971) ("While a judge should hesitate to undo his own work, and should hesitate still more to undo the work of another judge, he does have, until the final judgment, the power to do so and may therefore vacate or modify the interlocutory rulings or orders of his predecessor in the case."));

*Wasa Int'l Ins. Co. v. Hurtado*, 749 So. 2d 579, 580 (Fla. 3d DCA 2000) ("Because the trial judge here had not entered a final judgment in the case, she could modify her previous rulings and those of her predecessor." (citing *Tingle*).  Accordingly, if and to the extent the Circuit Court in this proceeding prior to removal was empowered to modify or vacate the foreclosure judgment entered in an earlier and separate proceeding before the same court but presided over by another judge, this Court can do so as well.[6]

Third, even were this Court unable to vacate the foreclosure judgment, it can still grant money damages to Plaintiffs with respect to Court III – relief which Plaintiffs explicitly request. Plaintiffs specifically "request that judgment be entered against the Issuer Defendants and the Fraudulent Conveyance Defendants, and each of them, for all damages caused by their fraud" which allegedly resulted in the foreclosure judgment, extinguishment of Plaintiffs' Subsequent Mortgages, and consequent losses to Plaintiffs.  That relief is squarely within this Court's capabilities.  At bottom, Plaintiffs do not seek reinstatement of their interests in the Pompano Property, but to be made whole with respect to their lost investments those interests represented – practically speaking, from the long trail of the sale proceeds.  Money damages can do that. Regardless of the Court's power to modify or vacate the foreclosure judgment, it can still grant

---

[6] The Court also notes that, under Fed. R. Civ. P. 60(b), a district court may, in an independent action, relieve a party from a final judgment issued by another district court where the specific circumstances required by the rule permit.  *See Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 222 (4th Cir. 1999) ("[A]n 'independent action' under Rule 60(b) may be brought by one who was not a party to the original action . . . [and] may be brought in a court other than the one that issued the contested order."); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) (implying that district court could modify or vacate order issued by separate district court under Rule 60(b), but not *sua sponte*); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251-52 (3d Cir. 2008) (registering court can vacate final order issued by rendering court where Rule 60(b)(6) "exceptional" criteria are met); *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 394 (5th Cir. 2001) (same under Rule 60(b)(4), where registering court determines that rendering court lacked jurisdiction); *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) (same); *Oliver v. City of Shattuck ex rel. Versluis*, 157 F.2d 150, 152 (10th Cir. 1946) ("Historically, it has been within the equitable powers of a federal court to grant relief from a civil judgment issued by another federal court."). Given that *Rooker-Feldman* does not apply here, this Court may be able to address the relief sought by Plaintiffs in Count III of their Amended Complaint within the arguably larger reaches of Rule 60(b).

legal and equitable relief in the form of monetary damages against those active or complicit in the alleged fraud.

### C.      Columbia's Motion to Dismiss

Columbia argues that Plaintiffs' claims against it – the downstream lender on a non-purchase loan to the eventual purchaser of the Pompano Property – fail to state a claim and should be dismissed on that basis.   Columbia is included in three Counts of the Amended Complaint:   Count IV, seeking foreclosure on the Subsequent Mortgages and imposition of a constructive trust on the Pompano Property sale proceeds; Count V, seeking a declaratory judgment regarding the validity of, and an imposition of a constructive trust over the proceeds of, the Receiver's sale of the Pompano Property; and Count XI, seeking a declaratory judgment that Plaintiffs have a security interest in, or imposition of a lien or constructive trust over, the Pompano Property sale proceeds.

Columbia construes Plaintiffs claims as effectively duplicative, all seeking imposition of a constructive trust on the proceeds paid to Columbia from the liquidation of Hunter and sale of the Pompano Property in order to restore and elevate the Subsequent Mortgages above Columbia's facially superior but later-acquired interest in the property. This is based on the theory that the foreclosure of the Developer Mortgage was ineffective to clear title to the Pompano Property.   Columbia argues for dismissal for several interlocking reasons:   (a) Plaintiffs, as Columbia contends is alleged in the Amended Complaint, had actual and constructive knowledge of the foreclosure of the Developer Mortgage and, thus, extinguishment of their junior Subsequent Mortgages; (b) the *lis pendens* filed in that foreclosure was effective regardless of notice to Plaintiffs; and (c) with regard to Columbia's taking of a security interest in the Pompano Property through its loan to Hunter, Columbia had no duty vis-à-vis Plaintiffs with respect to Plaintiffs' contention that Columbia should have discovered the existence (and

superiority) of the Subsequent Mortgages.   Columbia's second argument is correct and dispositive.

### 1.       Standard on Motion to Dismiss Under Rule 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.   *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002).   While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").    Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).   The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.   *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*,

556 U.S. at 678.   A court considering a Rule 12(b) motion is generally limited to the facts

contained in the complaint and attached exhibits, including documents referred to in the

complaint that are central to the claim.   *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959

(11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir.

2005) ("[A] document outside the four corners of the complaint may still be considered if it is

central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v.

Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).   While the court is required to accept as true all

allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion

couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.   "Dismissal

pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'"   *Magluta v.

Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957)).

## 2.   The Broad Effect Of *Lis Pendens* Under Florida Law

Under Florida law, once a plaintiff has filed an accurate *lis pendens* identifying the

subject property and the original owner of the property, all future interest holders are warned of

the existing lawsuit affecting the property and no further amendments to the *lis pendens* are

required, even if additional foreclosure defendants are added to the lawsuit.   *Nikooie v.

JPMorgan Chase Bank, N.A.*, --- So. 3d ---, 2014 WL 6911148, at *7-8 (Fla. 3rd DCA Dec. 10,

2014).   Florida's *lis pendens* statute expressly provides that a *lis pendens* constitutes a bar to

enforcement against the subject property of any subsequently acquired liens or interests in or

against that property that were not recorded as of the time the *lis pendens* was recorded.   Fla.

Stat. § 48.23(1)(d).   When a judicial sale is conducted pursuant to proceedings described in a *lis

pendens*, the property is forever discharged of all interests that were not recorded prior to the *lis

*pendens*.  Fla. Stat. § 48.23(1)(d).  When a *lis pendens* describes an action founded upon a duly recorded instrument, such as a mortgage, the *lis pendens* does not expire.  Fla. Stat. § 48.23(2).  "A *lis pendens* serves as constructive notice of the claims asserted against the property in the pending litigation with respect to one acquiring an interest in the property after the *lis pendens* is filed."  *U.S. Bank Nat. Ass'n v. Bevans*, 138 So. 3d 1185, 1189 (Fla. 3rd DCA 2014).  That is, *lis pendens* attaches to the *property*, not to the party or the action.  "One who purchases property subject to a *lis pendens* is bound by the judgment or decree rendered against the party from whom he makes the purchases as much so as though he had been a party to the judgment or decree himself."  *U.S. Bank Nat. Ass'n v. Quadomain Condominum Ass'n, Inc.*, 103 So. 3d 977, 979 (Fla. 4th DCA 2012 (quotation omitted).  And, one of the purposes of required recordation of *lis pendens* is "to protect future purchasers or encumbrancers of the property from becoming 'embroiled' in the dispute."  *Id.* at 978-79; *see also In re Martin*, 278 B.R. 634, 641 (Bankr. S.D. Fla. 2002) ("A notice of *lis pendens* or actual notice filed on the public records, protects both the *lis pendens* proponent and third parties." (citing *Medical Facilities Dev. Inc. v. Little Arch Creek Props. Inc.*, 675 So. 2d 915, 917 (Fla. 1996)).

### 3.   The *Lis Pendens* In The Foreclosure Action Bars Plaintiffs' Claims Against Columbia Asserted In The Amended Complaint

Plaintiffs argue that SLF Series G's failure to record an amended *lis pendens* to include PWD – to whom the Pompano Property was deeded and with whom Plaintiffs executed the Subsequent Mortgages – renders the *lis pendens* ineffective against them.  A search in 2008 for PWD in Florida's grantor-grantee index, they contend, would not have revealed the initial *lis pendens*, despite the later addition of PWD to the Foreclosure Action.  *See*, *e.g.*, *Oz v. Countrywide Home Loans, Inc.*, 953 So. 2d 619, 620 (Fla. 3d DCA 2007) ("[C]onstructive notice in Florida is imputed only through the grantor-grantee index of the official public records.")

(citing *Slachter v. Swanson*, 826 So. 2d 1012, 1014 (Fla. 3d DCA 2001)).  Thus, Plaintiffs claim to have had no constructive notice that PWD had been made party to the Foreclosure Action and that the property interest securing their Subsequent Mortgages was subject to that lawsuit.

As to the effectiveness of *lis pendens*, Florida law is contrary.  As the Third DCA explained,

> The twenty-day bar in the *lis pendens* statute, increased by the Legislature in 2009 to thirty days, exists for the benefit of the plaintiff and to warn non-parties.  *It does not preclude the plaintiff from amending its complaint, and thereby effectively amending its* lis pendens.  As a notice to the lawsuit itself – not to a particular and forever-limited universe of parties and claims – the *lis pendens* provided notice after amendment to the claims and cross-claims [asserted].  The plain words of the statute do not preclude a plaintiff's decision to add an otherwise-untimely lien claimant as a defendant in an amended pleading.

*Nikooie*, 2014 WL 6911148 at *7 (emphasis added).

Because a *lis pendens* was recorded identifying the Pompano Property prior to PWD receiving its deed and Plaintiffs making the Subsequent Mortgages, and because PWD was properly added to the Foreclosure Action, regardless of any fraud or lack of notice to Plaintiffs, that *lis pendens* was effective with respect to the Pompano Property.  Any rights that PWD had in the Pompano Property, including the right to encumber the property with the Subsequent Mortgages, arose after SLF Series G recorded the *lis pendens* in the foreclosure action.  Therefore, SLF Series G – and any later purchaser – acquired title to the Pompano Property free and clear of the Subsequent Mortgages.  Plaintiffs may seek redress against those parties which they allege defrauded them in shielding the Foreclosure Action from them and by permitting the foreclosure judgment and sale to go forward to the detriment of their interests in the Pompano Property.  But they do not allege that Columbia was a part of that fraud.  Accordingly, Plaintiffs' claims against Columbia in Counts IV, V and XI of the Amended Complaint must be dismissed.

### 4.     Columbia's Motion to Strike

Columbia's Motion to Strike is directed against Plaintiffs' request for attorneys' fees associated with Counts IV, V and XI of the Amended Complaint. The Motion is also directed against reference, in Count IX of the Amended Complaint, to Columbia's alleged full recourse against Westcor based title insurance coverage that may potentially be available to Columbia. The Court notes that Plaintiff's PSAC does not include any allegations regarding insurance coverage.  For that reason and because, in any event, Plaintiffs' claims against Columbia must be dismissed, Columbia's Motion to Strike is denied as moot.

### D.     The Utah Defendants' Motion to Transfer

The Utah Defendants request transfer of this action to the District of Utah, pursuant to 28 U.S.C. § 1404(a).  They explain that Plaintiffs have sued each of the Utah Defendants (among others, including many of the Defendants named here) in the Utah Action. The Utah Action involves identical or similar allegations arising out of the same operative set of facts alleged here, but covers a considerably broader set of investments and investment properties (twenty-seven, to be precise).

### 1.     Transfer Under 28 U.S.C. § 1404(a)

As the Supreme Court recently explained, 28 U.S.C. § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S.Ct. 568, 580 (2013).  The statute provides that [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

"To determine the propriety of transfer to a different district, courts engage in a two-step analysis under section 1404(a)."  *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263-64 (S.D. Fla. 2013)

> "First, courts determine whether the action could have been brought in the venue in which transfer is sought.  Second, courts assess whether convenience and the interest of justice require transfer to the requested forum."  In deciding the second step, "courts focus on a number of potential factors including:    (1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances."

*Id*. (quoting *Abbate v. Wells Fargo Bank, Nat. Ass'n*, 2010 WL 3446878, at *4-5 (S.D. Fla. Aug. 31, 2010) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005)).

"The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference."  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  That choice "should not be disturbed unless it is clearly outweighed by other considerations."  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).  "The burden is on the movant to establish that the suggested forum is more convenient" than the plaintiff's chosen forum.  *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008) (citing *Ricoh*, 870 F.2d at 573).  "Ultimately, transfer can only be granted where the balance of convenience of the parties strongly favors the defendant."  *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1282 (S.D. Fla. 2012) (quoting *Steifel*, 588 F.Supp.2d at 1339).

### 2.       Transfer of Venue to The District of Utah Is Appropriate Here

Transfer of this action to the District of Utah is appropriate under the conditions present here.

Case No. 15-CIV-61235-BLOOM/Valle

First, as discussed above, stripped of its claims against Columbia[7] and Westcor and properly construing Count III of the Amended Complaint, Plaintiffs claims could have been brought in the District of Utah.  The primary investment-side Defendants here (as in the Utah Action) are Utah companies or individuals residing in Utah.  Each of the other Defendants are named by Plaintiff in the Utah Action.  Moreover, each of the notes and other investment documents at issue in this case were written under and are governed by the laws of the State of Utah.  Am. Compl. Exh. C (SLF Offering Memorandum) at 110 ("(h) The laws of the State of Utah shall govern the validity, construction, performance and effect of this Note."); Am. Compl. Exh. D (Private Placement Memorandum for NA-SLF) at 165 ("(h) The laws of the State of Utah shall govern the validity, construction, performance and effect of this Note."); Am. Compl. Ex. E at Exh. B p. 23, Exh. C at 24, Exh. D at 24 ("7.7 Governing Law. This Mortgage shall be construed according to and governed by the laws of the State of Utah."); *Id*. at Exh. D, Note at 6 ("16. Construction. This Note shall be governed by and construed in accordance with the laws of the State of Utah.").

Second, the interests of convenience to the parties and judicial economy would be ill-served by forcing the parties to litigate this matter twice, both here and in Utah.  Plaintiffs have sued the same parties on allegations involving the same fraudulent scheme both in this action and in Utah.  While Plaintiffs did include certain investment advisors as Defendants in the Utah Action, and named certain downstream purchasers of the Pompano Property here and not there, this case is in every practical way a subset of the Utah Action.  Plaintiffs' initial investment and the consequent bridge loans for development of the investment property are part of the same series master investment plan – including as to SLF Series G.  The sale of the investment properties after their development failed was part of a single master purchase and sale agreement

---

[7] As all parties concede, Columbia is not subject to suit on Plaintiffs' claims in Utah.

– active including the Pompano Property.  Plaintiffs' theory of the fraud and their right to relief –

fraud by the investment-side Defendants and collusion or complicity, resulting in a lack of bona

fide or good faith ownership, by the purchase-side Defendants – is identical.  Plaintiffs' claims

largely overlap as between the two cases.  True, the intra-foreclosure fraud involving the

Subsequent Mortgages financing the Pompano Property does not appear with respect to the other

investment properties in the Utah complaint.  Then again, the Utah complaint does not describe

how SLF secured foreclosure of the other investment properties.  In any event, that distinction

simply makes the Pompano fraud a wrinkle in the larger fraudulent scheme.  In short, the fraud

alleged by Plaintiffs here is subsumed within the overarching fraud alleged in the Utah Action.

Accordingly, the locus of operative facts, the convenience of all parties, trial efficiency

and the interests of justice all weigh heavily in favor of transfer to Utah.  This holds true despite

the fact that most Plaintiffs are not from Utah; given the nature of this suit, trial here is no more

convenient, but trial twice is decidedly more inconvenient.  The witnesses and documents

relevant to SLF and related Defendants are located in Utah.  As is apparent from the issues of

personal jurisdiction raised by the Utah Defendants and Bo Brower, certain Defendants are only

available in Utah.  The investment properties are located in Washington, Oregon and Florida –

not in Utah.  But Plaintiffs' Complaints here and in the Utah Action make clear that the locus of

evidence in this case will be with the SLF Defendants, and not where the properties are located.

Finally, Plaintiffs' choice of forum is somewhat moot here – they have chosen to sue in *both*

fora.  The totality of the circumstances here clearly favors transfer of this action to the District of

Utah.

### 3.     The *Barton* Doctrine Does Not Complicate Transfer of Venue

The Receiver argues that because leave of the Washington court to sue the Receiver in

Utah was not obtained, and because the Receiver is not otherwise a party to the Utah Action,

under the *Barton* doctrine, the district court in Utah lacks subject matter jurisdiction over Plaintiffs' claims against the Receiver.  The Receiver's argument is misplaced.

"[I]t is a general rule that before suit is brought against a receiver, leave of the court by which he was appointed must be obtained."  *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000) (quoting *Barton v. Barbour*, 104 U.S. 126, 127 (1881)).  As one purpose of the *Barton* doctrine, the requirement to obtain leave enables the receivership court to maintain control over the receivership estate.  *See Palaxar Grp., LLC v. Williams*, 2014 WL 5059286, at *3 (M.D. Fla. Oct. 2, 2014); *In re VistaCare Grp., LLC*, 678 F.3d 218, 228 (3d Cir. 2012) *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "Where a plaintiff neglects to obtain leave from the appointing court, a suit filed against the receiver in another court must be dismissed for lack of subject matter jurisdiction."  *Patco Energy Express, LLC v. Lambros*, 353 F. App'x 379, 381 (11th Cir. 2009).

Here, the Washington court overseeing Hunter's liquidation appointed the Receiver in order to manage the Pompano Property.  The Receiver, based on that authorization, participated in this action before the Circuit Court and after removal to this Court.  Transfer of this action to a separate venue does nothing to upset or diminish the Washington court's authorization or the Receiver's management of the Pompano Property sale proceeds.  No new case is being initiated.  Rather, the current case in which the Receiver is participating is being transferred.  Accordingly, leave of the Washington court is unnecessary as it has already been given.  Further, continued participation of the Receiver in this action promotes control by the Washington court over the assets of Hunter's receivership estate.  This action may be transferred with the Receiver as a named Defendant consistent with the *Barton* doctrine.

### E.     Bo Brower's Motion to Dismiss

Bo Brower seeks dismissal for lack of personal jurisdiction and for failure to state a claim. The Defendant construes Plaintiffs' Amended Complaint as a shotgun pleading with insufficient allegations of improper actions taken specifically by Bo Brower.  Because this action will be transferred to the District of Utah, and Bo Brower is resident in Utah and subject to jurisdiction of the transferee court there, the issue of personal jurisdiction is moot.  Further, Plaintiffs' PSAC does not name Bo Brower as a Defendant.  This Court will leave whether and to what extent Plaintiffs will be required to amend their pleading to the sound discretion of the district court upon transfer.

### F.     Ramifications of Plaintiffs' Proposed Second Amended Complaint

Disposition of the Motion to Remand and Motion to Transfer involves interlocking considerations of supplemental jurisdiction and proper venue.  Consideration of those issues together is most clearly stated in reference to Plaintiff's Proposed Second Amended Complaint.

### 1.     Consideration of the Proposed Second Amended Complaint

For purposes of clarity, the Amended Complaint is Plaintiffs' operative pleading in this matter.  Plaintiffs, at the Court's request, submitted the PSAC to assist the Court in addressing the motions currently before it.  The Court has made reference to the PSAC in that analysis to provide the parties the fullest treatment of the issues presented here, but continues properly to treat the Amended Complaint as the operative pleading.  Because the Court has determined not to remand this case to the Circuit Court, and to transfer it to the District of Utah, the Court will, as noted above, leave consideration of whether and how to permit Plaintiffs to amend their pleading to the discretion of the court in Utah upon transfer.

> ### 2.   Plaintiffs' Proposed Second Amended Complaint Would Not Require Remand

The prospective changes in Plaintiffs' Proposed Second Amended Complaint do not require remand of this action to the Circuit Court.   The PSAC eliminates Plaintiffs' class representation claims, Counts VI and IX (which signaled federal jurisdiction by reason of the diversity of citizenship of the parties under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, 1446, 1453), and asserts a violation by PCG of Oregon securities laws, rather than federal securities laws.

Regardless, courts look to claims in the operative complaint at the time of removal to assess federal subject matter jurisdiction.   *See Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011) ("The existence of federal jurisdiction is tested as of the time of removal."); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294-95 (11th Cir. 2008) (same); *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 n.2 (11th Cir. 2007) ("[T]he district court must look at the case at the time of removal to determine whether it has subject-matter jurisdiction").   The Supreme Court has further held that a plaintiff's post-removal amendment of her pleading to eliminate a basis for federal jurisdiction solely to secure a state forum in which to try the case is a factor a district court can consider when deciding whether to remand a case.   *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case.") *superseded by statute*, 28 U.S.C. § 1367 (providing that a district court may in its discretion decline to exercise supplemental jurisdiction where one of four circumstances apply, including if it has "dismissed all claims over which it has original jurisdiction").   In making a determination as to pendent jurisdiction under 28 U.S.C. § 1367(c) –

including where federal claims have been "dismissed" – the district court should consider the factors articulated by the Supreme Court in *United Mines Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966): judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together. *Ameritox, Ltd. v. Millennium Labs., Inc.*, --- F.3d ---, 2015 WL 5155240, at *10 (11th Cir. Sept. 3, 2015) ("[D]etermining whether to dismiss the claims calls for the court to weigh the 'host of factors' outlined in *Gibbs* and *Cohill*: 'judicial economy, convenience, fairness, and comity.'").

This is not a case of improper removal. At the time Bo Brower removed this case to federal court, Plaintiffs' Amended Complaint pleaded minimal diversity and the required amount in controversy and contained claims for violation of federal securities laws, properly creating federal subject matter jurisdiction. Plaintiffs have on their own admission designed the PSAC so as to remove any claims invoking federal question or CAFA jurisdiction. *See* ECF No. [67] at 5-6. There is nothing wrong with attempting to avoid federal court or preferring a state forum. But the Court must consider the issue of forum manipulation in conjunction with the other *Gibbs* factors under the circumstances here – critically, the pending case in the District of Utah involving the same parties and allegations but covering twenty seven other investments and investment properties, all but the Pompano Property, implicated in the alleged fraud.

Again, this action involves a subset of the same larger fraud alleged in the Utah Action, and Plaintiffs request, at bottom, the same relief – including legal or equitable relief from the several state-level foreclosures involving the various investment properties. Declining to accept jurisdiction over Plaintiffs' state law claims and remanding the action to state court would force the parties to try this case twice, in Utah and before the Circuit Court. Plaintiffs cast this case as unique and separate from the overarching fraud alleged in the Utah Action largely on the basis of

their request to vacate the judgment of foreclosure in the Foreclosure Action.  On their argument, their other claims would fail as a set of dominoes if they cannot vacate the foreclosure judgment, a task they misconstrue as solely within the purview of the Circuit Court.  The Court has addressed and disposed of that argument above and below, *see* §§ III.B.2, III.E.3.  That is, at the very least, a federal district court can grant Plaintiffs money damages against the investment-side Defendants regardless of whether it can vacate the foreclosure judgment. Moreover, Plaintiffs' fraudulent transfer claims can be stated against the downstream interest holders even if the foreclosure judgment stands.   (On the flipside, those downstream purchasers would be immunized from Plaintiffs' claims as bona fide purchasers or good faith transferees – effectively functional equivalents here – even were the foreclosure judgment vacated.)  Regardless, the relief Plaintiffs seek with respect to the foreclosure judgment is not functionally or fundamentally different from the relief they seek in the Utah Action with respect to the other investment properties.  Those properties, on Plaintiffs' allegations in the Utah complaint, also went through foreclosure proceedings and were sold free and clear to Workmen's in the same sale as was the Pompano Property.  Plaintiffs' claims in the Utah Action challenge state court foreclosure proceedings in the same way in which Count III of their Amended Complaint does here.  If Plaintiffs believe that they need to turn to the state courts for recourse against the ramifications of those foreclosure judgments, they will need to litigate this fraud in at least three separate state fora (i.e., the investment properties are located in Washington, Oregon and Florida) and possibly in dozens of separate actions.  By contrast, the implied theory behind Plaintiffs' single action in Utah, and the upshot of this Court's holding with respect to Count III of the Amended Complaint and the Motion to Transfer, is that Plaintiffs can seek relief from all Defendants involved in the alleged investment fraud efficiently and economically before one

federal district court. This is because that court has the power to grant Plaintiffs the full panoply of relief necessary to address their alleged losses.

These conditions of judicial economy, fairness to the Defendants, and convenience of all implicated by these actions militate against declining pendent jurisdiction and remanding this case. The Court in its discretion declines to remand this case to the Circuit Court.

### 3.  Relief With Respect to Count III of the Proposed Second Amended Complaint

Plaintiffs have amended Count III of the PSAC to remove their request for money damages as relief with respect to vacation of the foreclosure judgment in the Foreclosure Action. Again, the Amended Complaint is the operative pleading. In any event, regardless of how Plaintiffs define their cause of action, the relief they seek with respect to SLF Series G and the Pompano Property (as with all the investment properties) is clear: return on their investment allegedly lost through fraud by SLF and its related entities in conjunction with the initial and subsequent purchasers of the investment properties. The District Court in Utah will manage when and how Plaintiffs will be permitted to amend their complaint to align this case with the Utah Action.

### 4.  Treatment of Plaintiffs' Fraudulent Conveyance Claim Against Columbia Referenced In The Proposed Second Amended Complaint

Plaintiffs' Proposed Second Amended Complaint contains a set of factual allegations regarding Columbia's knowledge of the allegedly fraudulent nature of the transfers of the Pompano Property preceding Columbia's loan to Hunter, by which Hunter ultimately took title to the property, including: that Columbia had constructive notice of the Subsequent Mortgages; that the Subsequent Mortgages had not been joined in the Foreclosure Action; that Columbia did not perform adequate due diligence when closing the loan to Hunter; and that, ultimately, Columbia was "not a good faith transferee who took for adequate value." PSAC ¶¶ 107, 122-

124, 192.   Plaintiffs further allege that Columbia's loan to Hunter "was not for comparable value."  *Id*. ¶ 107.  None of this implicates Columbia in any way in the alleged initial fraud.  But it does appear to state a claim for avoidance of both Columbia's security interest in the Pompano Property, taken as part of the loan to Hunter, and the transfer of the Pompano Property sale proceeds to Columbia, in satisfaction of its loan to Hunter.  *Compare* Am. Compl. ¶ 259 *with* PSAC ¶ 192.  Specifically, the PSAC alleges that Columbia, as a subsequent transferee of the value of the Pompano Property – which was initially transferred from PWD to SLF Series G through the foreclosure sale in order to defraud Plaintiffs, as holders of the Subsequent Mortgages – did not acquire its lien or take the sale proceeds for reasonably fair value and in good faith.  *See* Fla. Stat. §§ 726.05(1)(a), 726.09(1).

That said, Plaintiffs' fraudulent conveyance claim in Count VII of the PSAC is asserted against only what that complaint defines as the "Fraudulent Conveyance Defendants," which does *not* include Columbia.  Plaintiffs have themselves explicated that Columbia is *not* named in their proposed fraudulent transfer claim.  *See* ECF No. [67] at 3.

Finally, Columbia has acceded that Plaintiffs' claims against it, to the extent not dismissed, may be severed and retained, and adjudicated as between Plaintiffs and Columbia without involvement of the remaining Defendants.  *See* ECF No. [66] at 4-5.

As discussed above, Plaintiffs' claims against Columbia asserted in the Amended Complaint must be dismissed.  And Plaintiffs, while providing factual allegations in their Second Amended Complaint to support a claim of fraudulent transfer against Columbia, do not in fact propose to assert that claim.  That said, to the extent Plaintiffs intend to assert fraudulent conveyance claims against Columbia, those claims would be severed from the remainder of this action and would be separately adjudicated by this Court.

Case No. 15-CIV-61235-BLOOM/Valle

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

1. Westcor's Motion to Strike, ECF No. [16], is **DENIED AS MOOT**.

2. Plaintiffs' Motion to Remand, ECF No. [38], is **DENIED**.

3. Columbia's Motion to Dismiss, ECF No. [23], is **GRANTED**, and Plaintiffs claims against Columbia in Counts IV, V and XI of the Amended Complaint are **DISMISSED with prejudice**.

4. Columbia's Motion to Strike, ECF No. [24], is **DENIED AS MOOT**.

5. The Utah Defendants' Motion to Transfer, ECF No. [25], is **GRANTED** as to the request to transfer venue, and otherwise **DENIED without prejudice**.  The Clerk is directed to **TRANSFER** this action to the District of Utah pursuant to 28 U.S.C. § 1404(a).  The Clerk is further directed to transmit notice of this order to the court in the Utah Action.

6. Bo Brower's Motion to Dismiss, ECF No. [12], is **DENIED AS MOOT** with respect to the issue of personal jurisdiction, and otherwise **DENIED without prejudice**.

**DONE AND ORDERED** in Miami, Florida, this 21st day of September, 2015.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record